UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 5:12-CV-460-F |
| | ) | |
| VALERIE J. JURIK, MARK CURTIS, | ) | |
| and AT HOME ASSESSMENTS, LLC, | ) | |
| d/b/a/ SUNSTONE MEDICAL, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

On July 24, 2012, Plaintiff United States of America ("government") filed a complaint [DE-1] in this court, asserting a claim pursuant to the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, as well as state law claims of unjust enrichment and payment under mistake of fact against, among others, Defendants Valerie Jurik ("Jurik") and At Home Assessments, LLC ("AHA") (collectively, "Defendants").[1] On October 31, 2012, these Defendants filed a motion to dismiss [DE-18] pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. On December 20, 2012, the government filed its response to Defendants' motion [DE-23], and on January 2, 2013, Defendants filed a reply [DE-24]. Accordingly, the matter is ready for disposition. For the reasons stated below, the motion will be ALLOWED and the claims asserted against Defendants will be DISMISSED without prejudice. The court will permit the government an opportunity to file an amended complaint within 21 days of the date of this order.

---

[1] The complaint is also asserted against Mark Curtis. On November 15, 2012, the court entered a consent order dismissing the unjust enrichment and payment under mistake of fact claims asserted against Curtis. [DE-21.] Although Curtis has not joined in the instant motion, for the reasons stated herein the court will sua sponte dismiss the FCA claim asserted against him.

## I. STANDARD OF REVIEW

### A.     Rule 12(b)(6)

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted); *see also id.* at 551-53 (noting that the previous "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" is a "phrase [] best forgotten as an incomplete, negative gloss on an accepted pleading standard"). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (citation omitted).

When addressing a motion to dismiss under Rule 12(b)(6), a court generally may not look outside the complaint unless it treats the motion to dismiss as a motion for summary judgment.

2

*Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006). A court may, however, take judicial notice of matters of public record, and may also "consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); *see also Witthohn*, 164 F. App'x at 396 (stating that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed").

**B.    Rule 9(b)**

The elements of a FCA claim "are predicated on fraudulent conduct . . . ." *United States ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308, 314-15 (4th Cir. 2012) (citation omitted); *see also United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002) (noting that every circuit to consider the issue has held that Rule 9(b) applies to FCA complaints). In pleading fraud or mistake, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 258 (4th Cir. 2012) (quotation omitted). Those aspects of a fraud claim that may be pled generally "must still be alleged in accordance with Rule 8—a 'plausible' claim for relief must be articulated." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012). "Dismissal under Rule 9(b) is treated as a failure to state a claim under Rule 12(b)(6)." *Jones*, 469 F. App'x at 257

3

(quotation omitted).

## II. PLAINTIFF'S COMPLAINT

The following facts are alleged in the complaint. The United States Department of Veterans Affairs ("VA") operates several Prosthetics and Sensory Aids Service units, including one at the Durham VA Medical Center ("Durham PSAS"). The Durham PSAS provides prosthetic and orthotic services, sensory aids, medical equipment, and support services for veterans. This includes the VA's Home Improvements and Structural Alternations ("HISA") program, which provides funds to help defray the costs associated with structural modifications of homes to accommodate wheelchairs or other special needs of veterans. Mark Curtis ("Curtis") was the Durham PSAS' HISA program manager during the time period relevant to this action.

The VA utilizes a United States Government Purchase Card ("USGPC"), a type of credit card that allows authorized purchasing representatives to make purchases up to $25,000.00 for HISA and other VA programs. Curtis was authorized to use the USGPC for HISA and other VA program purchases.

The VA prohibits charging the USGPC for HISA home modification work until the work has been completed, which includes submission of a paper invoice, photos of the modification, and a statement of completion signed by the veteran for whom the work was performed.[2] The VA also prohibits charging the USGPC for VA purchases, including durable medical equipment ("DME"), before submission of a proper invoice and completion of the work.[3]

---

[2] The government does not allege any specific basis for such a requirement, be it contractual, regulatory, or otherwise.

[3] The government does not allege any specific basis for such a requirement, be it contractual, regulatory, or otherwise.

4

Defendant Jurik is the president and largest shareholder of Defendant AHA, a company that conducted a large part of its business with the Durham PSAS. The government alleges that, in letters sent to Defendant AHA authorizing agreed work, it was stated that an invoice, a statement of completion of work by the veteran for whom the work was performed, and photos of the completed work would be required prior to payment for the work.[4]

The government alleges that employees of Defendant AHA, at the express direction of Defendant Jurik, often submitted purchase orders and directly charged the USGPC for VA purchases prior to completing the required work. The government alleges that Defendant AHA needed the payments up front to purchase the supplies and equipment and complete the contracted work.[5]

The government generally alleges that Defendants submitted numerous false claims and made, or caused to be made or used, numerous corresponding false records material to these false claims. The government specifically alleges that Defendants obtained at least 32 payments through unauthorized USGPC charges or false invoices for: (1) HISA work in which the veterans' homes were not modified (or were not modified according to the agreement between Durham PSAS and Defendant AHA); and (2) other Durham PSAS services not provided, including DME.[6] The

---

[4] No specific letter is referenced, nor is an example copy of such a letter attached to the complaint. It is not alleged whether such letters stated these requirements as terms of a contract between the parties, as part of a regulatory scheme, or pursuant to some other basis.

[5] Although the government alludes to the existence of a contract, no terms of such a contract are specifically alleged or attached to the complaint.

[6] The government alleges these 32 specific payments by veteran (with the veterans' initials), the work allegedly not performed, and the amount paid to Defendants. The complaint does not specify which claims were made pursuant to unauthorized USGPC charges and which claims were made pursuant to a false invoice. Further, with regard to unauthorized USGPC charges, it is unclear whether the government alleges that certain uses were unauthorized because they were made prior to satisfying all alleged payment prerequisites, or for some other reason. Based on other allegations, the court assumes the former. If the government intends some other basis for unauthorized USGPC use, such a basis should be alleged with more

5

government alleges that approximately thirteen of the 32 veterans so identified died while waiting for AHA to perform the work for which payment had already been made, and that other veterans declined the services or had the work completed by another company.[7] The government alleges that Defendants have not repaid such claims.

The government alleges that a USGPC purchase made before completion of the associated HISA home modification was a false and fraudulent claim. The government further alleges that submission of invoices were often false—due to the fact that such invoices were for work not completed and Defendant AHA was not entitled to payment—and submission of a false invoice was a false and fraudulent claim by Defendants.

The government also alleges that Defendants created or caused to be made or used false records or statements material to these false claims, and that these false records and statements were created to avoid an obligation to repay funds to the VA. It is unclear whether such records or statements are alleged to be false because of the reasons stated above (that is, because they were submitted prior to completion of agreed work), or because some other falsification or manipulation of these records or statements occurred.

The government alleges that Defendants continually failed to notify Durham PSAS that it had received payment for work that it had not completed, and in many cases could not complete because the veteran died or declined the work.[8]

---

clarity.

[7] The government does not specifically allege which payments were made prior to the death of the veteran and which payments were made prior to the veteran declining the services or having the work completed by another company.

[8] The government does not allege what obligation, be it contractual, regulatory, or otherwise, Defendants had to so notify.

6

The court also recognizes the sample purchase order attached to the motion to dismiss.⁹ That purchase order states as follows: "The articles or services listed herein have been received, *or rendered ordered* in the quantity and quality specified originally or as shown by authenticated changes, except as noted." [DE-19-1 (emphasis added).]

The government asserts three causes of action against Defendants. In count 1, the government asserts a claim pursuant to the FCA. In this regard, the government generally alleges that, by virtue of the above stated facts: (1) Defendants knowingly presented or caused to be presented to the United States false or fraudulent claims, or conspired with others, for payment; (2) Defendants knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim, or conspired with others, for payment; and (3) Defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay, or conspired with others, to avoid or decrease an obligation to repay money to the government. The government specifically alleges that each claim for payment prior to the completion of the corresponding HISA work or other Durham PSAS services was a false claim made to the United States. The government also alleges that Defendants used one or more false records or statements, including payment requests and invoices supporting such claims.¹⁰ The government alleges that all actions by Defendants were done knowingly, including with reckless disregard and deliberate

---

⁹ The government argues that such an exhibit does not establish that the complaint fails to set forth a claim upon which relief can be granted, but it does not appear to question the authenticity of the document. The complaint refers to an agreement between the parties, and for purposes of this motion the court considers the purchase order as part of that agreement.

¹⁰ Again, the government does not clearly allege whether such records or statements were false because they were submitted prior to completion of the agreed work, or because some other falsification or manipulation of these records or statements occurred.

7

ignorance, and that as a result of submission of these claims the government made payments in excess of the amounts to which Defendants were entitled or failed to recover an obligation owed by Defendants.

With regard to the government's unjust enrichment claim (count 2), the government alleges that Defendants wrongfully obtained funds from the United States to which they were not entitled. With regard to the government's payment under mistake of fact (count 3), the government alleges that Defendants obtained funds from the United States to which they were not entitled in that the claims submitted constituted misrepresentations of material fact.[11]

## III. ANALYSIS

Defendants argue that the FCA claim fails to state the elements necessary to maintain such a claim, and also fails to state the alleged fraud with the requisite particularity. Further, Defendants argue that the unjust enrichment and payment under mistake of fact claims fail as a matter of law because a valid contract exists between the parties, making such quasi-contract claims improper. Finally, Defendants argue that the claims asserted against Defendant Jurik individually should be dismissed because the government has not adequately alleged that her actions were performed

---

[11] In addition to those facts stated above, the government alleges several facts that tend to intimate dishonest or corrupt behavior, including that Defendants tried to have all of Defendant AHA's work conducted through Curtis (even files that were not assigned to Curtis), that Defendants provided Curtis with gifts and services, that competing bids submitted by Defendant AHA's competitors were obtained from Curtis, that Defendants discussed with Curtis recreating files for the Durham PSAS after the investigation became known, and that Defendant Jurik directed Defendant AHA employees to change AHA's business practice (that is, directed employees to complete all work before charging the USGPC) after the investigation became known. However, the court does not see where any of these acts are alleged to have been fraudulent or false. The government also alleges that Defendants obtained the USGPC authorization number of Curtis and directly charged the USGPC for HISA work and other VA program purchases. However, although alleged to be a "misuse" of the USGPC, the government does not appear to allege that this misuse was fraudulent or false, save for such times that Defendants submitted purchase orders and charged the USGPC before the work was completed.

8

outside the scope of her employment with Defendant AHA. The government opposes Defendants' motion, and argues that the allegations are sufficiently detailed to state a claim for presentation of false claims in order to obtain payment without satisfying the required prerequisites (including completion of the required work). The government also states that the mere existence of an express contract will not foreclose equitable relief where the contract does not address the issue raised in the claims. In this regard, the government generally argues that, to the extent this is not an action pursuant to a contract, Defendants' arguments fail to address the allegations made or establish a basis for dismissal. Finally, the government argues that under the FCA, an individual is liable for her direct claims for payment, as well as when the individual knowingly makes or uses or causes to be made or used a false record that is material to the false claim. The government argues that Defendant Jurik is therefore liable for her actions as set out in the complaint.

### A. FCA Claim

The FCA was enacted "to discourage contractor fraud against the federal government." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citation omitted). The FCA creates civil liability for any person who "knowingly presents, or causes to be presented, [to the United States government] a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement" to get a false or fraudulent claim paid or approved by the Government. 31 U.S.C. § 3729(a). "The requisite intent for FCA liability 'is the knowing presentation of what is known to be false,'" *United States ex rel. Joslin v. Cmty. Home Health of Md., Inc.*, 984 F. Supp. 374, 383 (D. Md. 1997) (quoting *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1156 (2d Cir. 1993)), and to succeed it must be shown that "a false statement be made with actual knowledge, deliberate ignorance, or reckless

disregard of the statement's falsity," *id.* at 384-85. "[T]he term 'false or fraudulent claim' includes those instances when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quotation omitted).

The FCA is a "fraud prevention statute." *United States ex rel. Owens v. First Kuwaiti Gen. Trading & Contracting Co.*, 612 F.3d 724, 728 (4th Cir. 2010) (quotation omitted). It is not intended to "punish honest mistakes or incorrect claims submitted through mere negligence." *Id.* (quotation omitted). Furthermore, it does not allow a plaintiff to "shoehorn what is, in essence, a breach of contract action into a claim that is cognizable under the False Claims Act." *Id.* (quotation omitted); *see also Wilson*, 525 F.3d at 378 (stating that a plaintiff "cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision. To hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract"); *United States ex rel. Durcholz v. FKW, Inc.*, 189 F.3d 542, 545 (7th Cir. 1999) ("If the government knows and approves of the particulars of a claim for payment before that claim is presented, the presenter cannot be said to have knowingly presented a fraudulent or false claim. . . . We decline to hold [a defendant] liable for defrauding the government by following the government's explicit directions."). To state a claim under the FCA, a plaintiff must allege the following elements: "(1) that the defendant made a false statement or engaged in a fraudulent course of conduct; (2) such statement or conduct was made or carried out with the requisite scienter; (3) the statement or conduct was material; and (4) the statement or conduct caused the government to pay out money or to forfeit money due." *United States ex rel. Harrison v. Westinghouse Savannah River Co.* (*Harrison II*), 352 F.3d 908, 913 (4th Cir. 2003).

10

In transactions where the government "conditions payment of a claim upon certification of compliance with a statute or regulation . . . a party violates the FCA by falsely certifying compliance with the statute or regulation." *Joslin*, 984 F. Supp. at 383-84 (citation omitted). Simply failing to comply "with a statute or regulation, in the absence of a false certification, is insufficient to constitute a false statement within the meaning of the FCA." *Id.* at 383 (citation omitted). To establish liability under a false certification theory, a plaintiff "must show that a government contract or program required compliance with certain conditions as a prerequisite to a government benefit, payment, or program; the defendant failed to comply with those conditions; and the defendant falsely certified that it had complied with the conditions in order to induce the government benefit." *Glynn*, 710 F.3d at 216 (quotation omitted).

It is unsettled in the Fourth Circuit whether mere "submission of invoices and reimbursement forms," without an affirmative certification of compliance, can constitute an "implied" false certification of compliance with the terms of the particular government program. *Harrison v. Westinghouse Savannah River Co. (Harrison I)*, 176 F.3d 776, 787 n.8 (4th Cir. 1999) (stating that it is "questionable an implied certification claim in the Fourth Circuit" exists); *United States ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1461 (4th Cir. 1997) ("There can only be liability under the [FCA] where the defendant has an obligation to disclose the omitted information." (citation omitted)); *United States ex rel. McLain v. KBR, Inc.*, No. 1:08CV499 (GBL/TCB), 2013 WL 710900, at *6 (E.D. Va. Feb. 27, 2013) ("The Fourth Circuit has not adopted this [implied certification] theory."); *Joslin*, 984 F. Supp. at 384-85 ("To hold that the mere submission of a claim for payment, without more, always constitutes an 'implied certification' of compliance with the conditions of the government program seriously undermines [the principle that the FCA is not

11

designed to punish every type of fraud committed upon the government] by permitting FCA liability potentially to attach every time a document or request for payment is submitted to the government, regardless of whether the submitting party is aware of its non-compliance."). Indeed, recent courts to consider the issue in this circuit have indicated a similar theory, fraud by omission, may be more appropriate in some, but not all, circumstances. *See, e.g., United States ex rel. Rostholder v. Omnicare, Inc.*, No. CCB-07-1283, 2012 WL 3399789, at *14 (D. Md. Aug. 14, 2012) (noting that the Fourth Circuit "has not yet adopted the implied certification doctrine," but that "an omission may render an otherwise truthful statement or claim false or fraudulent," creating FCA liability "where the defendant has an obligation to disclose the omitted information" (quotation omitted)).

The court has three concerns with the government's FCA claim as it is currently alleged.[12] First, the government's theory of the case is unclear. In this regard, without further citation or argument, the government generally disputes that a false certification is required to establish a cause of action under the FCA. [DE-23 at 27.] While the court agrees that a myriad of hypothetical facts might support a FCA action, the government in this case alleges that Defendants' claims for payment were fraudulent or the statements or records accompanying claims for payment were false (the first element of a FCA claim), due entirely to the time at which such claims were filed, that is, *because the VA's payment prerequisites were not satisfied prior to Defendants' claims for payment.* No other allegations of false or fraudulent *content* (e.g., specific reference to an invoice that contained inflated

---

[12] To reiterate, the government in this case alleges specific veterans who did not receive a service, the service not provided for each veteran, and the amount paid for each claim, as well as the existence of payment prerequisites (i.e., completion of the work and submission of a statement of completion and photos of the completed work) that were allegedly not met prior to Defendants' submission of invoices for these claims. The government argues that invoices submitted for payment were false or fraudulent because, at the time these invoices were presented, the prerequisites alleged to exist had not been met.

12

or incorrect information) or *omission* (e.g., specific reference to an obligation to disclose certain information) are asserted with the required particularity. The government does not argue a fraud by omission theory, and for purposes of this motion the court finds that such a theory has not been asserted. Indeed, the complaint as currently alleged appears to be entirely consistent with cases in which the plaintiff proceeded under a false certification theory. *See, e.g., Harrison I*, 176 F.3d at 786 (listing cases in which a false certification theory was asserted). By its statement that a false certification is not required, however, it appears that the government concedes no affirmative certification of compliance exists in this case. It is unclear whether the government means to proceed under an *implied* false certification theory, though if this is the government's position, it fails to argue adequately that such an implied theory should be adopted in the Fourth Circuit. Without further argument to support the government's position, or further facts to support the allegation that Defendants' conduct was false or fraudulent, the court must dismiss the FCA claim pursuant to Rule 12(b)(6). *See Rostholder*, 2012 WL 3399789, at *14 ("[Plaintiff] does not argue there was an affirmative false statement or false certification; [plaintiff] does not argue this court should adopt the implied certification theory; and [plaintiff] does not argue for the theory of fraud by omission . . . . [Plaintiff's] argument instead appears to read the first prong—false statement or fraudulent conduct—out of the *Harrison* test for FCA liability. Without clearer guidance from the Fourth Circuit, I cannot agree that such an approach is appropriate as to claims brought here under 31 U.S.C.A. § 3729(a)(1), § 3729(a)(2), and § 3729(a)(7), as [plaintiff] has alleged them."). Therefore, for this reason, the court will ALLOW Defendants' motion to dismiss the FCA claim.

Second, although certain prerequisites to payment are alleged to exist, the government has not sufficiently stated that these prerequisites were pursuant to a government contract or program

13

that required such compliance. Alleging the existence of specific conditions without alleging their specific basis is insufficient to satisfy the government's minimum pleading burden.[13] *See id.* at *15 ("[Plaintiff], however, has not sufficiently explained the nature of [the reimbursement request and report] process or directed the court to the specific regulations, guidance manuals, or specific forms that are used in the payment process—much less copies of the specific forms that requested reimbursement . . . at issue."). Because the government has not sufficiently alleged the underlying contract or program making Defendants' conduct false or fraudulent, the complaint fails to state a claim. Therefore, for this alternative reason, the court will ALLOW Defendants' motion to dismiss the FCA claim.

Finally, although not a basis for dismissal in this case, the court notes that the above cited case law makes it clear that not all failures to comply with a statute, regulation, or contract constitute available grounds for relief under the FCA. Although the terms of the contract or agreement to which the complaint refers are not alleged to be the basis for relief in this case, without evaluating the terms of the contract or agreement, it is not possible for the court to distinguish between actionable fraud and mere breach of contract. This concern is amplified in this case because the purchase agreement attached to the motion to dismiss is argued by Defendants to permit payment, not when the work is completed, but when the work is ordered. The terms to which the government

---

[13] Defendants argue that at all times they were operating under the terms of the purchase orders, which they further argue permitted Defendant AHA to receive payments when the described services were ordered. Defendants argue that the government fails to allege that the manner in which Defendant AHA submitted claims for payment was objectively and knowingly false or fraudulent, as opposed to a mere breach of contract. The government responds by arguing that the language of the purchase orders does not negate the allegedly false invoices (presumably, through the corresponding failure to satisfy the alleged payment prerequisites). Without a more adequately pled complaint, however, the court cannot fully evaluate such arguments.

14

agreed, therefore, may have created a situation in which Defendants cannot be said to have knowingly presented a false or fraudulent claim. *See Durcholz*, 189 F.3d at 545.

## B.  State Law Claims

When the United States enters into a contract, "ordinary principles governing contracts and their interpretation remain applicable." *United States v. Bankers Ins. Co.*, 245 F.3d 315, 321 (4th Cir. 2001) (citation omitted). "[W]hen the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *United States v. Winstar Corp.*, 518 U.S. 839, 895 (1996) (quotation omitted). Accordingly, although not addressed by either party, it appears the law of North Carolina applies to the government's state law claims.

Under North Carolina law, "[t]he doctrine of unjust enrichment is based on 'quasi-contract' or contract 'implied in law' . . . ." *Atl. & E. Carolina Ry. Co. v. Wheatly Oil Co.*, 163 N.C. App. 748, 753, 594 S.E.2d 425, 429 (2004) (citation omitted). "Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co.*, 211 N.C. App. 252, 259-60, 712 S.E.2d 670, 677 (2011) (citation omitted). Similarly, "when money is paid to another under the influence of a mistake of fact, and it would not have been paid had the person making the payment known that the fact was otherwise, the money may be recovered. The basis of such recovery is that money paid through misapprehension of facts belongs, in equity and good conscience, to the person who paid it." *Tarlton v. Keith*, 250 N.C. 298, 306, 108 S.E.2d 621, 626 (1959). However, "[i]t is well established that if there is a contract between the parties, the

15

contract governs the claim and the law will not imply a contract . . . . [In such cases] an action for breach of contract . . . is the proper cause of action." *Delta Envtl. Consultants, Inc. v. Wysong & Miles Co.*, 132 N.C. App. 160, 165, 510 S.E.2d 690, 694 (1999) (quotation omitted).

The government generally argues that, to the extent this is not an action pursuant to a contract, Defendants' arguments fail to address the allegations made in the complaint. However, the complaint, at best, contains a mere recitation of the elements of these quasi-contract claims. Further, even assuming the government is correct in arguing that, under North Carolina law, such quasi-contract claims may be maintained despite the allegation of the existence of a contract between the parties, the terms of the alleged contract and how such terms fail to provide an adequate remedy for the government's quasi-contract claims are not sufficiently alleged or argued by the government. Accordingly, the court will ALLOW the motion to dismiss the quasi-contract claims.

## C. Defendant Jurik in Her Individual Capacity

Because the court finds that the complaint fails to state claims under the FCA or of unjust enrichment and payment under mistake of fact, it declines to address at this time Defendants' alternative arguments specifically related to Defendant Jurik in her individual capacity.

## IV. CONCLUSION

For the above stated reasons, it is hereby ORDERED that:

1. Defendants Valerie Jurik and At Home Assessments, LLC's motion to dismiss [DE-18] is ALLOWED, and all claims asserted against these Defendants are DISMISSED without prejudice;

2. The False Claims Act claim asserted against Defendant Mark Curtis is sua sponte DISMISSED without prejudice; and

16

3. Within **21 days** of the date of this order, the government may file an amended complaint consistent with this order if it so chooses.

SO ORDERED

This the 2ⁿᵈ day of May, 2013.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

17